Case 2:19-cr-00184-JDC-KK   Document 34   Filed 06/05/25   Page 1 of 7 PageID #: 181

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 2:19-CR-00184-01** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **KORRYON CARTER (01)** | **RETIRED MAG JDG JRS KAY** |

## MEMORANDUM ORDER

Before the Court is a "Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(C)(1)(A) and First Step Act of 2018" (Doc. 29) wherein Defendant Korryon Carter moves for a retroactive modification of his sentence.

## BACKGROUND

On February 16, 2011, Defendant Carter pleaded guilty to one count of possession with intent to distribute crack cocaine, and one count of carrying a firearm during and in relation to a drug trafficking crime.[1] Carter was sentenced to 60 months' imprisonment on the drug charge, and 60 months' imprisonment on the firearm charge to be served consecutively followed by a total of 6 years' supervised release. In that same proceeding, the district court revoked Carter's supervised release on a 2007 federal conviction for possession of a firearm by a felon; he was sentenced to 24 months' imprisonment to run concurrently with the previous sentence.[2]

---

[1] Docs. 48-49 of Docket No. 2:10-225.
[2] SEALED Pre-Sentence Investigation report, ¶ 32, Doc. 16, Docket No. 2:19-184.

On October 27, 2015, Carter's 60-month term of imprisonment on the drug charge was reduced to 48 months pursuant to 18 U.S.C. § 3582(c)(2); all other aspects of his sentence remained unchanged.[3]

On November 9, 2017, Defendant, Carter was released from custody and began his term of supervised release. On or about July 1, 2018, Carter was arrested by the Calcasieu Parish Sheriff's Office for armed robbery, illegal possession and carrying of a firearm by a convicted felon, and illegal possession of a stolen firearm.[4] During the robbery, Carter approached the two cashiers, lifted up his shirt to reveal a handgun and demanded that the cashiers empty the cash register. After taking the cash, he ordered the cashiers to lie down on the floor and count to 10. He then fled the scene.

On July 3, 2018, Carter's United States Probation Officer issued a "Petition for Warrant or Summons for Offender Under Supervision." The Petition for Warrant asserted that Carter had violated Mandatory Condition No. 2 of his supervised release by committing new criminal conduct, namely the armed robbery and firearms offenses for which he had been arrested by state authorities on July 1, 2018.[5] The district court issued a warrant based on the allegations in the petition which served as a detainer while Carter remained in state custody with pending charges.[6]

On June 6, 2019, Carter was named in a one-count bill of information charging him with one count of Hobbs Act Robbery in violation of 18 U.S.C. § 1951.[7] Carter pleaded

---

[3] Doc. 111 of Docket No. 6:10-225.
[4] Docket 140-1 of Docket No. 6:10-225.
[5] Docket 116 of Docket No. 6:10-225.
[6] Docket 118 and 140-1 of Docket No. 6:10-225.
[7] Docket 1 of Docket No. 2:19-184.

guilty to the bill of information and pursuant to a plea agreement, he admitted that committed the robbery, and he had violated the conditions of his supervised release on his 2011 conviction.[8]

At sentencing, Carter received enhancements to his offense level for his use of the firearm.[9] Carter was deemed a career offender based upon prior convictions for Aggravated Assault with a Firearm and Possession with the Intent to Distribute Cocaine Base.[10] The Court sentenced Carter to 160 months of imprisonment, consecutive to any other sentences and three years of supervised release. [11]The Court then revoked Carter's supervised release and sentenced him to 36 months' imprisonment to run consecutively with the Hobbs Act robbery sentence.[12] Carter is now housed at Talladega FCI, with a projected release date of July 24, 2032.

## LAW AND ANSLYSIS

Carter seeks relief under the basis that his sentence was "unusually long" under Section 1B1.13(b)(6) of the Sentencing Guidelines, given a change in law that would have rendered a lower guideline range, were he to commit the same crime today. Specifically, Carter argues that the application of the Career Offender Enhancement at his original sentence was misapplied; and, in order to avoid sentence disparities among similarly situated defendants, a shorter sentence warranted. Carter fails to show that he should receive early release on any of these bases.

---

[8] Docs. 12 and 14.
[9] PSR ¶ 11.
[10] PSR ¶¶ 16-22.
[11] Docs. 17 and 19.
[12] Docs. 131, 132 of Docket No. 10-cr-225.

As noted by the Government, Carter attaches to his filing 3 of 4 pages of an "Individualized Needs Plan"; letters of reference; and multiple certificates of educational accomplishments.[13] The Government informs the Court that Carter also alludes to filing a request to his warden, yet he has not attached the required documentation to evidence that request as required by Title 18, United States Code, section 3582(c)(1)(A). Despite Carter not showing that he has exhausted his administrative remedies, the Government asks that the Court deny Carter's motion.

First, the Government argues that sentencing disparities are not valid bases for compassionate release under the policy statement or the Fifth Circuit precedent. Carter argues that sentencing disparities amount to an extraordinary and compelling reasons for compassionate release. Carter contends that his underlying conviction did not qualify under the Career Offender enhances; the Court used a prior conviction outside the "lookback" period for calculating his Criminal History; and his prior felony conviction for aggravated assault with a firearm deemed him a career offender in a way that would now be insufficient under current Fifth Circuit law.[14] Finally, Carter contends of the disparity between his sentence in the instant case and that of similarly situated defendants.

In section 3582(c)(1)(A)(i) of Title 18 of the United States Code, Congress enacted a narrow exception to the general rule that a federal court "may not modify a term of imprisonment once it has been imposed," permitting a court to reduce a term of imprisonment where it finds that "extraordinary and compelling reasons" warrant a

---

[13] Docs. 29-1 – 29-3.
[14] Doc. 29, pp. 14-20.

reduction. Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons," 28 U.S.C. § 994(t), but the Commission's authority necessarily is limited by Congress's clear directive that any such reasons be both extraordinary and compelling.

In 2023, the Sentencing Commission promulgated amendments to section 1B1.13 of the Guidelines that purport to allow, with certain limitations, consideration of changes in law—including ones Congress has chosen not to make retroactive—when determining whether a defendant has presented an extraordinary and compelling reason for a sentence reduction. That change is reflected in new subsections (b)(6) and (c), which provide:

> (6) UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.
>
> (c) LIMITATION ON CHANGES IN LAW.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

88 Fed. Reg. at 28,255; *see* U.S.S.G. § 1B1.13(b)(6), (c). This amended text became effective on November 1, 2023. 88 Fed. Reg. at 28,254; *see* 28 U.S.C. § 994(p). Thus, the

text of subsection 1B1.13(b)(6) purports to allow defendants with an "unusually long sentence" to cite changes in law as a potential extraordinary and compelling reasons for release, if the change produces a "gross disparity" between the sentence being served and the sentence that would be served if the inmate were sentenced now. U.S.S.G. § 1B1.13(b)(6). However, subsection 1B1.13(b)(6) specifically excludes non-retroactive changes in the Sentencing Guidelines from being a basis for relief.

Moreover, all of Carter's arguments under Guidelines section 1B1.13(b)(6) fail because the Fifth Circuit Court of Appeal has deemed this part of the policy statement invalid. The Fifth Circuit addressed this issue in *United States v. Austin*, 125 F.4th 688 (5th. Cir. 2025) relying on its previous findings in *United States v. Escajeda,* 58 F.4th 194 (5th Cir. 2023). The Fifth Circuit found prisoners only show extraordinary and compelling reasons for relief if they face "some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the prisoner. *Austin*, 125 F.4th at 69, quoting *Escajeda*, 58 4th at 186. Because non-retroactive changes in law affect all prisoners the same and, by definition, have no effect on prisoners already in prison, they cannot be extraordinary and compelling. *Austin*, 125 F.4th at 692. As such, in accordance with *Austin*, such change is not an extraordinary and compelling basis warranting relief.

Additionally, the Court finds that Carter's claims also fail under the plain text of the policy statement. Carter's argument that he would now have a lower criminal history score because of a change in the Sentencing Guidelines fail. "[A]mendments to the Guidelines Manual that ha[ve] not been made retroactive" are specifically excluded from consideration. U.S.S.G. § 1B1.13(b)(6). Next, Carter's disparity arguments fail because

the kind of disparity treated in the policy statement is only a "gross disparity between the sentence being served and the sentence likely to be served at the time the motion is filed," and not disparities between this inmate's sentence and other offenders' sentenced. U.S.S.G. § 1B1.13(b)(6). Furthermore, the Fifth Circuit has held that "a prisoner cannot use § 3582(c) to challenge the legality or the duration of his sentence." *Escajeda*, 58 F.4th at 188.

Lastly, the factors in 18 U.S.C. § 3553 do not warrant release. The Court notes that Carter's instant offense stemmed from an armed robbery in which Carter demanded money after revealing to two victims that he had a handgun. This latest offense was while Carter was on supervised release for another crime that involved a firearm and a drug trafficking crime. Carter's Criminal History Category VI and Career Offender Designation was the product of numerous prior felony convictions, including at least four prior conviction for firearm related offenses and two drug related offenses. Here, Carter has failed to persuade the Court that he is not a danger to the community, and as such a reduction in sentence is not warranted under the sentencing factors in § 3553(a).

## **CONCLUSION**

For the reasons explained herein, Carter's Motion for Compassionate Release is **DENIED.**

**THUS DONE AND SIGNED** in Chambers on this 5th day of June, 2025.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**